IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO.  *C-14-CV-484* |
| | § | |
| | § | |
| ALL PROPERTY AND ASSETS ON | § | |
| DEPOSIT OR HELD IN THE UBS | § | |
| FINANCIAL SERVICES, INC. | § | |
| ACCOUNT NUMBER OM 05095 | § | |
| | § | |
| Defendant, | § | |

VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, Plaintiff, files this action for forfeiture against all property

and assets on deposit or held in the UBS Financial Services, Inc. account number OM 05095 and

alleges on information and belief that:

1.   This is a civil action in rem brought to enforce the provisions of:   (a) 18 U.S.C. §

981(a)(1), which provides for the forfeiture of personal property involved in a transaction or

attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 or any property traceable to

such property; and (b) 18 U.S.C. § 981(a)(1)(C) which provides for the forfeiture of any property,

real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C.

§ 1956(c)(7)(B)(iv), including property that is derived from bribery of a public official, or the

misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official.

2.   The property subject to forfeiture consists of all property and assets on deposit or held

in the UBS Financial Services, Inc. account number OM 05095 (hereinafter referred to as

"Defendant Property").   As of November 4, 2014, Defendant Property, a brokerage account

consisting of investments and cash, was valued at $1,109,989.66.

3.     This court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.   This court has *in rem* jurisdiction over Defendant Property under 28 U.S.C. § 1355(b).   Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

4.     Homero De La Garza Tamez (hereinafter referred to as "De La Garza") is a resident of Ciudad Victoria, Tamaulipas, Mexico and was employed with the State of Tamaulipas, Mexico as a public official from 2005 to 2010.   During this period, Eugenio Hernandez Flores was the governor for the State of Tamaulipas and appointed De La Garza as the director of the Instituto Tamaulipeco De Vivienda Y Urbanismo (hereinafter referred to as "ITAVU"), which is the Tamaulipas Institute for Housing and Urban Development.

5.     ITAVU is the department in Tamaulipas responsible for supporting lower income residents with housing programs and financing programs.   One of the programs under ITAVU assisted cities by paying half of the costs associated with the repair of city streets and the construction of new streets within their city.   The city would pay the remaining half of the costs. The program did not require cities to participate in the program.   ITAVU also developed properties and built homes, in conjunction with providing special financing programs, which allowed low income families to move into new homes.

6.     There were instances during the time period that De La Garza was director of ITAVU when individuals associated with the State of Tamaulipas government were instructed by higher-level officials to grant certain construction contracts to particular contractors.   The government officials would then falsify and manipulate the contracts during the bidding process to allow a particular contractor to win the bid.

7.     Some of the contractors paid De La Garza, as a public official in the position of

2

director of ITAVU, a bribe for receiving government contracts.   De La Garza received bribes, in

the form of money payments, from contractors while he was with the State of Tamaulipas

government for contracts that were granted.   De La Garza received multiple bribes throughout his

political career.   De La Garza received these bribes in the forms of cash and bank deposits made

into his bank accounts, including Defendant Property.

       8.     After accepting the bribes as a public official, De La Garza deposited the bribe

money he had received in Mexico into a United States bank account at J.P. Morgan Chase in

McAllen, Texas.   De La Garza invested all of the money he received as bribes into several

accounts as stated below, which he ultimately transferred to Defendant Property.   The money in

Defendant Property was entirely derived from bribes received by De La Garza.

I.    <u>Financial Transactions</u>

a.  <u>INTER NATIONAL BANK (INB) account number #XXXX6475</u>:

       9.     De La Garza opened account XXXX6475 at Inter National Bank in McAllen,

Texas (hereinafter referred to as "INB #6475") in September 2008.   Account documentation for

INB #6475 indicates De La Garza stated to INB that his occupation was a civil engineer and he

held that position for the last 15 years.   De La Garza falsely stated to the bank that the source of

income for his deposits was income generated from his work as a civil engineer.    De La Garza

had no outside employment or income when he was the director of ITAVU, which was from

2005-2010.   De La Garza falsely told the bank, when specifically asked in banking records, that

he was not a politically exposed person (PEP), when in fact he was a PEP. (In financial regulation,

"politically exposed person" (PEP) is a term describing someone who has been entrusted with a

prominent public function, or an individual who is closely related to such a person. A PEP

3

generally presents a higher risk for potential involvement in bribery and corruption by virtue of

their position and the influence that they may hold.   During the period of September 2008 through

April 2010, De La Garza deposited approximately $113,000 USD into INB #6475 multiple wire

transfers from his bank accounts held at Banorte in Mexico.   The source of the money De La

Garza deposited into his Banorte bank accounts in Mexico was from bribe money De La Garza

received in Mexico. On March 20, 2014, De La Garza closed INB #6475 by purchasing a cashier's

check in the amount of $98,459.05 USD.   The cashier's check was deposited in August 2014 into

Defendant Property.

b.   INTER NATIONAL BANK account # XXXX4175:

10.      De La Garza opened account XXXX4175 at INB (hereinafter referred to as "INB

#4175") in March 2007.   De La Garza stated to INB in account opening documents that he was

currently self-employed as a civil engineer.   However, in May 2007 De La Garza was employed

with the state government of Tamaulipas, Mexico as the director of ITAVU and had no outside

employment.

11.      Bank account documents identify approximately four separate deposits totaling

$268,412.65 USD into INB #4175.   The deposits were made from December 2007 through April

2009 by inter-bank transfers from De La Garza's other INB accounts and by checks written by De

La Garza.   The source of the four deposits is one individual who routinely received a significant

amount of government contracts with the state government of Tamaulipas, Mexico during the time

that De La Garza was director of ITAVU and who paid De La Garza bribes for the granting of

construction contracts in Tamaulipas.

12.      Bank account documents also show three deposits in June 2009, totaling $182,000

USD, that were transferred into INB #4175 from Mexican bank accounts belonging to a particular

4

company.   De La Garza received bribes from multiple contractors and De La Garza had no outside employment during the time period these deposits were made.   These payments were also bribes paid to De La Garza.

13.     On August 12, 2009, De La Garza wrote a personal check from INB #4175 in the amount of $400,000 USD and deposited the check into De La Garza's account at J.P. Morgan Chase Bank account # XXXX3665 (hereinafter referred to as "JPMC #3665") in McAllen, Texas. The check was made payable to himself.   Between March 2007 and August 2009, there were significant withdrawals made from INB #4175 and deposited to JPMC #3665.   De La Garza attempted to conceal the true source of the funds by layering the transactions.

14.     After accepting illegal bribes and depositing them into INB #4175, De La Garza ultimately closed this account and split most of the proceeds into two separate accounts held at J.P. Morgan Chase Bank and Defendant Property, both located in McAllen, Texas.   On April 26, 2013 De La Garza closed INB #4175 and wired $150,000 USD from INB #4175 to Defendant Property.

c.   J.P. MORGAN CHASE BANK account # XXXX3665:

15.     De La Garza opened JPMC #3665 in McAllen, Texas in August 2005.   Bank account records show multiple cash deposits totaling $46,900 USD from May 2007 to September 2008.   These deposits were all structured deposits under $10,000 in currency, which avoided the currency transaction reporting requirement.   De La Garza knew that the source of the cash deposits into JPMC #3665 were the bribes paid to De La Garza.

16.     In December 2008 and April 2009 there were two deposits into JPMC #3665 totaling $208,412.65 USD.   The source of the two deposits was an individual who received a significant amount of government contracts in the State of Tamaulipas during the time De La Garza was the director of ITAVU.   These payments were also bribes paid to De La Garza.

5

17.     In August 2009 De La Garza transferred $51,236.74 USD from JPMC #3665 to open J.P. Morgan Chase Investment Services account number XXXX4913 (hereinafter referred to as "JPMC #4913). This is an investment account that De La Garza used to purchase various investment securities. On September 2009 De La Garza transferred an additional $40,978.31 to his JPMC #4913.

18.     In August 2009 De La Garza transferred $500,000 USD from JPMC #3665 to open another J.P. Morgan Chase Investment Services account number XXXX4930 (hereinafter referred to as "JPMC #4930"). De La Garza used the proceeds deposited into the investment account to purchase various investment securities.

19.     In March 2011, De La Garza closed JPMC #3665 by transferring out $119,832.80 from this account and opening J.P. Morgan Chase account number XXXX1299 (hereinafter referred to as "JPMC #1299").

d.     J.P. MORGAN CHASE INVESTMENT SERVICES account number XXXX4930:

20.     De La Garza opened JPMC #4930 in McAllen, Texas in August 2009 and deposited the $500,000 USD transfer from JPMC #4930. The $500,000 USD deposit is bribe money paid to De La Garza.

21.     In April 2011, De La Garza closed JPMC #4930 and transferred $54,803.50 into De La Garza's JPMC #1299. De La Garza also transferred approximately $599,342 to an account in the name of a nominee at J.P. Morgan Chase Investment Services account number XXXX5906 (hereinafter referred to as "JPMC #5906").

e.     J.P. MORGAN CHASE INVESTMENT SERVICES account number XXXX4913:

22.     De La Garza established JPMC 4913 in McAllen, Texas in August 2009 after depositing $51,236.74 USD that was transferred from JPMC #3665. There were two more

transfers from the same account into JPMC #4913 in September 2009, totaling $48,763.26 USD. On April 2011 the account was closed when $74,101.59 was transferred to De La Garza's JPMC #1299.

### f.  J.P. MORGAN CHASE account number XXXX1299:

23.    De La Garza opened JPMC #1299 in March 2011 in the name of a nominee. The funds on deposit in JPMC #1299 were payable on death to De La Garza.   Bank account records for the time period beginning March 2011 to the present show deposits of USDs in the amounts of $119,832.80, $74,101.59, $54,803.50 and $28,570.50, totaling $277,308.39.   The four deposits came from De La Garza's aforementioned accounts at J.P. Morgan Chase Bank.

24.    On August 10, 2011, De La Garza purchased investment securities with $220,000 USD from JPMC #1299, which were ultimately transferred into Defendant Property.   The remaining funds from JPMC #1299, $47,928.26 USD, were used by De La Garza to purchase a cashier's check that was ultimately deposited into the Defendant Property. These payments were also bribes paid to De La Garza.

### g.  UBS FINANCIAL SERVICES, Inc. account number XXXX5095 (Defendant Property):

25.    The account holder of Defendant Property is held in the name of a nominee.   De La Garza is listed as acting as power of attorney for the account.   Account records state that the nominee account holder acquired the funds in Defendant Property as a gift from De La Garza in 2011 for security reasons.

26.    Defendant Property was funded in April 2013 by transferring approximately $850,000 USD worth of securities from J.P. Morgan Chase Bank account number XXXX8732 (hereinafter referred to as "JPMC #8372") into Defendant Property.   De La Garza purchased the securities held at JPMC #8372 with the bribe money he received as director of ITAVU and which

7

he had laundered through his various J.P. Morgan Chase account.   In addition to the securities, De La Garza wire transferred $150,000 into Defendant Property in April 2013 from INB #4175.   This money was also bribe money paid to De La Garza while he was director of ITAVU.   Additionally, there was a cashier's check deposited into Defendant Property on April 26, 2013 in the amount of $47,928.26 that was purchased with funds from JPMC #1299.

27.    De La Garza is the true owner of Defendant Property.   All of the property and assets on deposit in Defendant Property constitute bribe money paid to De La Garza for his benefit while he was a public official.

28.    The Defendant Property is subject to forfeiture pursuant to:   (a) 18 U.S.C. § 981(a)(1), which provides for the forfeiture of personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960 or any property traceable to such property; and (b) 18 U.S.C. § 981(a)(1)(C) which provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1956(c)(7)(B)(iv), including property that is derived from bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official.

<u>NOTICE TO ANY POTENTIAL CLAIMANT</u>

YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   The verified claim must be filed no later than 35 days from the date this complaint is sent in accordance with Rule G(4)(b).

An answer or motion under Fed. R.Civ.P. 12 must be filed no later than twenty-one (21) days after filing the claim.   The claim and answer must be filed with the United States District

8

Clerk for the Southern District of Texas and a copy must be served upon the undersigned Assistant

United States Attorney at the address provided in this complaint.

PRAYER

WHEREFORE, the United States of America prays that judgment of forfeiture be entered

against the Defendant Property in favor of the United States of America and for such costs and

other relief to which the United States of America may be entitled.

> Respectfully submitted,
>
> KENNETH MAGIDSON
> United States Attorney
>
> By:  s/ Julie K. Hampton
> JULIE K. HAMPTON
> Assistant United States Attorney
> State Bar No. 24032269
> Federal Bar No. 431286
> 800 N. Shoreline Blvd., Suite 500
> One Shoreline Plaza
> Corpus Christi, Texas 78401
> (361) 888-3111

VERIFICATION

I, Castulo Valdez, a special agent with the Federal Bureau of Investigation, hereby affirm

and verify that the facts set forth in the foregoing Complaint for Forfeiture in Rem are true and

correct to the best of my knowledge and belief.

> Castulo Valdez
> Special Agent, FBI

Sworn and subscribed before me, the undersigned authority, on this ___9th___ day of
December, 2014.

> Notary Public in and for the State of Texas

My commission expires: 12/09/2017

MARISELDA C. GARZA
Notary Public, State of Texas
My Commission Expires
April 03, 2017

9

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem was

mailed via certified mail or certified international mail, return receipt requested to:

1.      Homero De La Garza
         To Be Served in Person

2.      All Persons Named on Account or with Signature Authority

3.      UBS Financial Services, Inc.

on this the _11th_ day of _December_, 201_4_.

s/ Julie K. Hampton
JULIE K. HAMPTON
Assistant United States Attorney

10